Good morning, Your Honor. Good morning. Emanuel Guerra, on behalf of the Petitioner, Mr. Pinzon. I think the question here is, does the definition of a conviction, whether it's a crime of moral turpitude, does it change? Does it change with the times of society? And it does. The conviction here occurred in 1996, excuse me, 1995. Let's get one thing straight, though. It was not an aggravated felony. It was sexual assault in the fourth degree, which is a misdemeanor. And it was not charged in an aggravated felony as a sexual abuse of a minor. Let's get one thing clear. There were statements made by Mr. Pinzon when he was stopped that the complainant was 15 to around 17. So that's where the context of a minor, that's the context of the minor, the complainant being a minor. But it is not an aggravated felony. There is no concept, excuse me, the facts underlying the conviction make no reference whatsoever that it was an aggravated felony. So let's, that's the first things first. And the significance of that, Your Honor, is this. If it was an aggravated felony on a sex abuse, sex assault of a minor, I'm not going to stand before you to say that it was not a crime of moral turpitude. But the Parilla case, for example, the court indicated it's not an aggravated felony if it's a sex abuse of a minor. You take a look at the modified analysis to determine whether or not it's an aggravated felony. And the court in Parilla, Your Honor, said it is. And I don't disagree with that. I don't think anybody disagrees with that. I don't think society disagrees with that. Because, for God's sake, Your Honor, if someone assaults a seven-year-old repeatedly, that's, we're not here to insult you. We're not here to insult society. That's not an aggravated felony. That's sex assault of a minor. Now, is that a crime of moral turpitude? You know what, Your Honor, I'm going to submit to you, and I think Mr. Pinzon is also in agreement, that a sex assault, repeated sex assault on a seven-year-old, yes, it is a crime of moral turpitude because it is vile. It is contrary to our sense. It's contrary to our sense of decency. But the concept of moral turpitude changes. Now, what the record that's before you is, what did Mr. Pinzon do that the government believes he committed a crime of moral turpitude? And what did the immigration judge determine to come up with that result? Number one, under the modified approach, you take a look at the indictment. Well, there was no indictment here, Your Honor. There may have been an indictment at some point, but there was a plea agreement. The plea agreement specifically stated, the indictments, the three counts of indictment are dismissed if he pleads to sex assault as a petty, excuse me, as a misdemeanor. 1995, the evidence before you on the indictment, the probable cause determination, as well as the plea agreement, is he touched the breast of a 15-year-old. Excuse me, counsel, but there was an accusatory pleading. There was a modification of the indictment, and then he pled guilty to the accusatory pleading as modified. You are correct, Your Honor. But on the plea agreement itself, you'll take note that the three counts on the indictment were ultimately dismissed. But there remained a charge, a lesser charge that he pled to. You are correct. But if you take a look at those three charges initially, there were also misdemeanors. There may have been charges, felonies, but there were ultimately misdemeanors because the statute in Guam says, if this is your first offense, it will be a misdemeanor. But I guess what I'm trying to, I think what we have to take a look at is, was his conduct, was his conduct so vile and so vile that when we take a look at it as reasonable individuals, as reasonable members of the community? Isn't the case that he used force? Your Honor, force, force in this particular case can mean anything. It can mean a touch. Because the evidence before you is he touched the breast and there's no allegation that it was inside the clothing. There's no allegation that what kind of touching it was. And his testimony, Mr. Pinzon's testimony, I did touch her. I touch her, I touch her there and I touch her on the butt. But he pled guilty to using force and coercion. Your Honor, for example, in the Fulao case, the BIA case, it defined whether the Hawaii statute for assault in the third degree is a criminal offense. This may be a Guam case, but the analysis is the same. In Fulao, someone punched someone else. That's force. It's not crime of moral turpitude. Because what you have to take a look at is, is the conduct so vile that it shocks the consciousness? I don't think it does today, Judge. I don't think it does in 1995. Because society changes. Every day society changes. And this is one of those situations where you watch TV today. As a matter of fact, I came in on the flight this morning. I came in on the flight from Honolulu. And I remember this place because I went to Hastings. I didn't go to Hastings, but I went there several times to visit. That was about 15, 20 years ago. I swear to God, I see two kids over there. Two probably teenagers walking to school. Kissing in public. Does this shock our consciousness? It doesn't. 20 years ago, it probably did. 25 years ago, it probably did. Dr. Ruth on TV, the sex doctor. 10 years ago, 15 years ago, it shocked us. 25 years ago when I was growing up, Playboy magazines. We have to sneak around because there's some sense in the community there's something wrong. It must be immoral what you're doing. But what shocks the conscience in Guam may not shock the conscience in San Francisco. You are correct, Your Honor. But there must be a set of standards. And what I'm saying is this, Your Honor. Look. The record before you, the record that's here, he readily admitted what he did to the agents at the port of entry. There is a plea agreement. It tells us what, it told us what happened. Now, he was not charged with sex abuse of a minor. There are no facts indicating what degree of force was used. So if he was walking down the street, for example, or he was at a nightclub, and he touched someone, an adult, or he touched his significant other in an inappropriate manner, and the significant other said, you know what, that's not right. Now, the facts in Pinson's case may be a little bit different because of the age difference. But the fact remains the same. Is what he did, does it shock the consciousness? I would submit to you, Your Honor, that in today's society, it does not. If there were more facts, if there were more circumstances indicating that Mr. Pinson, in fact, had sexual intentions for this matter, that it quite possibly could be. But he testified that he was playing around. And he stopped. He stopped as soon as he realized that it was his conduct wasn't wanted. So it changes with time.  Twenty-five, 30 years ago, like I said, this probably would be a crime of moral turpitude. Your time has expired. Thank you. I think we have your point in mind. Thank you. Good morning, Your Honors. Counsel, my name is Margaret K. Taylor. I represent the government in this matter. Parties agree that there is a legal issue before the court, and that the legal issue is whether the crime for which Mr. Pinson was convicted constituted a crime involving moral turpitude. However, that's where our agreement ends, because the government strongly, it's the government's position that the crime for which Mr. Pinson was convicted did constitute a crime involving moral turpitude. He was convicted of engaging in sexual contact by force or coercion, as Judge Alarcon pointed out. And the force or coercion itself is the base, vile, and depraved element of this crime, which constitutes a crime involving moral turpitude. Now, contrary to what Mr. Pinson says about the changing morals, on December 12, 2005, this court issued a decision in Valencia that's cited in the briefs. And in footnote two of that decision, this court stated that carnal knowledge with use of force, which is what Mr. Pinson was convicted of, on a child between ages 13 and 15 constituted sexual abuse of a minor, which, as was discussed earlier, is not at issue here. But if it's ---- It's a whole different deal. I mean, carnal knowledge of somebody 13 or 15 as opposed to this situation. I think it's a, I don't think it's a completely different thing. But, of course, Your Honor, you're the judge. But what we do have involved, certainly that's similar, is that the footnote in Valencia and Mr. Pinson, the crime Mr. Pinson convicted, the conduct was between an adult and a child. If the court moves to the modified categorical approach, it can look at the plea agreement. And, again, contrary to what Mr. Pinson's counsel stated on page 448 of the record, it says, and this is part of the plea agreement, on or about April 20, 1995, in the territory of so on and so forth, the defendant and Tania Atencio, that's the 15-year-old, were alone in an apartment. When the defendant touched the breasts of Tania Atencio, Ms. Atencio struggled with the defendant and force was used to accomplish the touching. So at least from the victim's point of view, this was not a playful interlude. This was an adult male trying to force sexual, forcing sexual contact on her. And, of course, the standard here, which this court pointed out in Parrilla, which is one of the decisions which the court asked parties to address in supplemental briefing, set out a standard for deferring to the board's construction of sexual, of crime-involving moral turpitude in the sexual area. And the standard is that if the board's interpretation is not clearly contrary to the plain meaning, then the court will defer to it. And I don't know how much times have changed, but they haven't changed so much that it is not within the circle of plain meaning. Let me ask a different question having to do with the equal protection. Mr. Pinzon is in a situation where he's a lawful resident alien, and much to his misfortune, he left and came back. And now you treat him as someone seeking entry to the United States. And the question is whether we haven't actually addressed that directly in the Ninth Circuit. I know other circuits have, but isn't it a disparate application of the law to treat him, who already was a lawful resident alien, as different than others simply because he took a legal trip outside? First of all, he should have requested parole before he left, advanced parole from DHS, and could have avoided this particular circumstance for himself. But in ‑‑ So he would get a piece of paper in effect? Well, he would, the DHS would decide whether he should, he would be allowed to leave the United States, using, you know, whatever standards they would deem appropriate. But under 101A13C5, that's the definitional section of the INA. The ‑‑ when the 1996 Act was passed, the Congress changed the law about lawful permanent residents leaving the United States and coming back, and basically did away with the Flutie doctrine. And what they did is they put in place a sort of streamlined situation for lawful permanent residents, so that when they leave and they come back, you don't have to go through this whole Flutie analysis that we had before. But there are several specifically enumerated exceptions to this sort of streamlined system. And if he hadn't fallen in an exception, he would have just been able to come and go. If he hadn't been convicted of a crime, yes, he would have been able to come and go. But ‑‑ I was curious about the same thing as I was preparing for this. I think actually, with having been convicted of a crime of moral turpitude with a minor, even though he hadn't left the country, he would still be removable, wouldn't he? That's correct, Your Honor. That's absolutely correct. It's just that he got caught when he came back. But that's absolutely correct, Your Honor. Would there be discretion if he had stayed in the country and committed the crime versus leaving and coming back and being ‑‑ seeking entry? You mean in terms of 2012? In terms of the Attorney General? In terms of the Attorney General's discretion? Well, there would have been prosecutorial discretion, certainly. But in terms of relief, he would be in no different situation than he is now. Is that your question, Your Honor? No. No. His situation would be no different. Do Your Honors have any other questions? So you're saying that he would have been removable even if he had been picked up on a traffic ticket? If he had left. That's correct. The travel itself did not make him removable. The travel brought him to the attention of the DHS. Thank you. So on Judge Allegrant's question, I think what he was illustrating is the fact that if there's something that was brought to the attention, a trafficker or something like that, he would be in the same position. That's right. Or if DHS found him, by serendipity he would still be in the same situation. It wouldn't require a traffic ticket, travel, or anything really. All right. Thank you. Thank you very much. The government actually asked that the court dismiss for lack of jurisdiction. I didn't get to that part of my argument, but it's set out in the brief. And if not, deny the petition for review. Thank you. Thank you. Thank you. The case is argued and submitted.
judges: Hug, Alarcon, McKeown